# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Qwest Corporation,

          Plaintiff,

v.

Minnesota Public Utilities Commission;
David Boyd, in his official capacity as
Chairman of the Minnesota Public Utilities
Commission; J. Dennis O'Brien, in his official
capacity as a member of the Minnesota Public
Utilities Commission; Thomas Pugh, in his
official capacity as a member of the Minnesota
Public Utilities Commission; Phyllis Reha, in
her official capacity as a member of the
Minnesota Public Utilities Commission; and
Betsy Wergin, in her official capacity as a
member of the Minnesota Public Utilities
Commission,

          Defendants.

Civil No. 10-3735 (DWF/JJK)

**MEMORANDUM
OPINION AND ORDER**

_____

Jason D. Topp, Esq., Qwest Corporation; and John M. Devaney, Esq., Perkins Coie, LLP, counsel for Plaintiff.

Jeanne M. Cochran, Assistant Attorney General, Minnesota Attorney General's Office, counsel for Defendants.

_____

**INTRODUCTION**

This matter is before the Court on a Motion for Judicial Review and Declaratory Relief brought by Plaintiff Qwest Corporation ("Qwest"). For the reasons set forth below, the motion is denied.

**BACKGROUND**

At issue in this action is the scope of the regulatory authority of Defendant Minnesota Public Utilities Commission ("MPUC") in the wake of the Telecommunications Act of 1996, Pub. L. No. 104-104, (1996) (codified at 47 U.S.C. §§ 151-710) (the "Act"). Two provisions of the Act are primarily relevant to the present dispute. Section 251 of the Act requires that Incumbent Local Exchange Carriers ("ILECs"), such as Qwest, provide access to certain network facilities owned by the ILEC ("Section 251 Elements") to its competitors, known as Competitive Local Exchange Carriers ("CLECs"). 47 U.S.C. § 251(c)(3). The Federal Communications Commission ("FCC") determines which elements constitute Section 251 Elements that must be made available to CLECs. 47 U.S.C. § 251(d)(2). If the ILEC and a CLEC are unable to agree on the rate to be charged for the Section 251 Elements, the Act gives rate-setting authority to a state commission, such as the MPUC. 47 U.S.C. § 252(b). When setting the rates, a state commission uses a methodology referred to as Total Element Long Run Incremental Cost ("TELRIC"), which is tied to the cost to the ILEC of providing the network element at issue. *See* 47 U.S.C. § 252(d)(1).

Section 271 of the Act sets forth certain requirements for Regional Bell Operating

Companies ("RBOCs"), of which Qwest is one, that wish to provide long distance service. 47 U.S.C. § 271. Among the requirements is that the RBOC lease certain network elements to CLECs ("Section 271 Elements"). RBOCs are not, however, required to offer Section 271 Elements at TELRIC rates. Those rates are instead governed by the just, reasonable, and nondiscriminatory rate standard of Sections 201 and 202 of the Communications Act of 1934.

In the *Triennial Review Remand Order* ("TRRO") issued in 2005, the FCC announced standards under Section 251 that ultimately resulted in certain elements no longer being listed as Section 251 Elements. *See In the Matter of Unbundled Access to Network Elements, Review of Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, Order on Remand, 20 F.C.C.R. 2533 (Feb. 4, 2005). As a result of the TRRO, the high capacity loops and high capacity transport at issue in this action are no longer Section 251 Elements, although they continue to be Section 271 Elements.

Following the TRRO, the MPUC issued an order on January 9, 2006 directing that "Qwest shall make a filing showing cause why this Commission should not open a contested case proceeding to investigate whether Qwest's wholesale rates for intrastate services offered under 47 U.S.C. § 271 are just and reasonable." (Compl. ¶ 6, Ex. 1, Order to Show Cause, ("Show Cause Order") at 3.) Qwest opposed the proceeding on the grounds that the MPUC has no authority over the rates Qwest charges for Section 271 Elements. (Compl. ¶ 6.) The MPUC disagreed with Qwest's federal preemption argument and determined that state law granted it authority over the rates for wholesale

services and elements.  (Compl. ¶ 6, Ex. 2, Notice and Order for Hearing ("Hearing Notice") at 6.)  The MPUC then referred the issue to the Office of Administrative Hearings for contested case proceedings before Administrative Law Judges ("ALJs").  (Hearing Notice at 11.)

The ALJs agreed with the MPUC that it had jurisdiction under state law to regulate the intrastate elements at issue.  (Compl. ¶ 12, Ex. 3, Findings of Fact, Conclusions, and Recommendation ("ALJ Recommendation") at 17.)  The ALJs found that Qwest's intrastate access rates were unjust and unreasonable.  (ALJ Recommendation ¶ 38.)  The ALJs recommended, in pertinent part, that the MPUC: "(1) require Qwest to file a wholesale tariff or price list for network elements that it is obligated to provide to local service competitors or that it voluntarily provides; [and] (2) cap the prices for those elements at Qwest's interstate access rates[.]"  (*Id.* at 14.)

In an order issued April 23, 2010, the MPUC adopted and affirmed the ALJs' Report in substantial part.  (Compl. ¶ 29, Ex. 4, Order Requiring Price List and Supporting Rationale ("Price List Order") at 15-16.)  The MPUC did not, however, adopt the ALJs' recommendation that the MPUC cap Qwest's wholesale intrastate rates at the levels Qwest charges for analogous interstate elements.  (Price List Order at 16.)  The MPUC instead ordered Qwest to "[s]ubmit for Commission review and approval a list of prices for wholesale elements that Qwest is obligated to provide to local service competitors or that it provides voluntarily, other than the elements subject to 47 U.S.C. § 251," and "[w]here Qwest proposes setting a different rate for an intrastate

4

element than it proposes for the corresponding interstate element, [to] submit a detailed rationale explaining the factual basis for the difference and demonstrating that the result is just, reasonable and nondiscriminatory." (*Id.*)

On May 12, 2010, Qwest filed a Petition for Rehearing of the Final Order, which the Commission denied on August 4, 2010. (Compl. ¶ 31.) Qwest then filed the current action with this Court, seeking declarations that the MPUC's rulings violate federal law, are arbitrary and capricious, and are preempted by federal law; and that the MPUC exceeded its authority under the Act.

## DISCUSSION

### I.     Legal Standard

The Court reviews the MPUC's interpretation of federal law *de novo* and will set aside its findings of fact only if they are arbitrary and capricious. *Southwestern Bell Telephone, L.P v. Missouri Pub. Serv. Comm'n*, 530 F.3d 676, 682 (8th Cir. 2008). Qwest asserts that the MPUC's legal finding that it has jurisdiction over the wholesale elements and services at issue in this matter conflicts with the clear language of the Act. Qwest also asserts that the MPUC's adoption of a just, reasonable, and nondiscriminatory pricing standard conflicts directly with FCC regulations. The MPUC argues that the case does not present a justiciable controversy, the Price List Order is not preempted, and the MPUC did not act in an arbitrary or capricious manner. The Court addresses the parties' arguments below.

## II.     Justiciability

As a threshold issue, the MPUC argues that the record fails to demonstrate that Qwest has suffered any harm from the Price List Order. Qwest seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that federal courts can grant declaratory relief in "a case of actual controversy." The "case of actual controversy" language limits federal court action to justiciable cases. *Public Water Supply Dist. No. 10 of Cass County, Missouri v. City of Peculiar, Missouri*, 345 F.3d 570, 572-73 (8th Cir. 2003). Qwest's request for declaratory relief therefore must meet the traditional justiciability requirement of ripeness. *Id.*

The ripeness inquiry requires the examination of both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). "A party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree." *Nebraska Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000). The hardship prong requires that a plaintiff allege a direct injury resulting from the challenged conduct. *Public Water Supply Dist. No. 10*, 345 F.3d at 573.

The MPUC asserts that Qwest has not suffered any actual harm here. After the proceeding before the MPUC, the CLECs whose complaints initiated that proceeding informed the MPUC that they do not purchase elements off of Qwest's intrastate tariff, but instead purchase off of Qwest's interstate tariff. According to the MPUC, absent some evidence that any CLECs would actually pay lower prices as a result of the Price

6

List Order, Qwest cannot show actual harm and therefore the case is not justiciable. Qwest asserts that the MPUC's unwarranted regulation of Qwest's Section 271 Elements is a violation of federal law that is itself harmful to Qwest regardless of the prices CLECs pay.

The Court concludes that a justiciable controversy exists between the parties. Qwest has alleged that the MPUC has improperly asserted authority over the rates Qwest charges for intrastate network elements and has improperly concluded that those rates are unjust and unreasonable. In alleging that the Price List Order requires Qwest to charge lower prices on its intrastate tariff than it would otherwise charge absent state regulation, Qwest has sufficiently alleged a direct injury resulting from challenged conduct. The Court now addresses the parties' substantive dispute.

### III.   Authority Under Section 271

Qwest argues that the Price List Order rests on a finding by the MPUC that it has jurisdiction over the rates for Section 271 Elements. Qwest asserts that state commissions have no authority under Section 271 and therefore cannot set rates for Section 271 Elements. Qwest relies on the Eighth Circuit's statement that it "joins those federal courts which have concluded the FCC has exclusive jurisdiction over § 271." *Southwestern Bell Telephone, L.P.*, 530 F.3d at 682. The MPUC asserts that it is not seeking to enforce Section 271 or otherwise claiming authority to act pursuant to federal law. The MPUC asserts that those federal cases concluding that the FCC has exclusive jurisdiction to implement and enforce Section 271 are therefore irrelevant here.

The Court disagrees with Qwest's description of the Price List Order as an attempt to set rates for Section 271 Elements. Rather, through the Price List Order, the MPUC seeks to set rates for those elements that are not Section 251 Elements. While many of those elements that are not Section 251 Elements and are subject to the Price List Order are also Section 271 Elements, this distinction is critical. The Court agrees with Qwest that the MPUC does not have authority under federal law to set rates for Section 271 Elements. Minnesota state law does, however, require telephone companies to charge just and reasonable rates. Minn. Stat. § 237.06. For those elements that are no longer Section 251 Elements and for which TELRIC rates no longer apply, Minnesota state law thus authorizes the MPUC to regulate the rates charged by telephone companies.

The language of the Price List Order establishes that the MPUC was enforcing state law. In the Order, the MPUC stated that it "finds nothing in the text of § 271, or of the 1996 Act in general, to preclude this Commission from fulfilling its duty under state law to scrutinize rates charged for intrastate services." (Price List Order at 8.) The Order directs Qwest to "[s]ubmit for Commission review and approval a list of prices for wholesale elements that Qwest is obligated to provide to local service competitors or that it provides voluntarily, other than the elements subject to 47 U.S.C. § 251." (*Id.* at 16.) Because the Court concludes that the MPUC was asserting authority under state law in the Price List Order, Qwest's argument that the MPUC has no authority under the Act to regulate rates for Section 271 Elements is not dispositive of the issue before the Court. Similarly, those cases holding that the FCC has exclusive jurisdiction over Section 271,

including the Eighth Circuit's *Southwestern Bell Telephone* decision, are not controlling here.

**IV.    Preemption**

Qwest asserts that the MPUC may not rely on state law because any state law authority to set rates for Section 271 Elements has been preempted. A state law that conflicts with a federal law is preempted under the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2. *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985). Congressional intent to preempt state law can either be expressed in statutory language or implied in the structure and purpose of federal law. *Id*. at 713. Implied preemption has two types—field and conflict preemption. Field preemption is inferred where Congress legislates so pervasively in a particular field that no room remains for supplementary state legislation. *Id*. Even if Congress has not completely displaced state regulation, preemption may occur when state law actually conflicts with federal law. *Id*. Conflict preemption arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id*. (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963) and *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). State laws can be preempted by both federal statutes and federal regulations. *Id*. at 713.

### A.     Field Preemption

Qwest asserts that in enacting the Act, Congress removed regulation of local markets from the states and preempted state regulation over competition to provide local services. Qwest relies on *Southwestern Bell Telephone Co. v. United States*, in which the Eight Circuit stated that "[t]he new regime for regulating competition in this industry is federal in nature, and while Congress has chosen to retain a significant role for the state commissions, the scope of that role is measure by federal, not state law." 225 F.3d 942, 947 (8th Cir. 2000) (citation omitted). Qwest asserts that the absence of any delegation of Section 271 authority makes it clear that Congress left no room for states to regulate under that section. Qwest contends that its field preemption argument is confirmed by the fact that Section 271 does not include a savings clause.

The MPUC responds that Section 601(c) of the Act expressly preserved states' independent state law authority to set rates for the elements at issue here. The MPUC asserts that because Section 271 does not address pricing of local network facilities, the FCC has not been granted exclusive authority to set those prices. The MPUC therefore contends that it continues to have authority under Minnesota state law to ensure that rates charged by local telephone companies in Minnesota are just, reasonable, and non-discriminatory.

The Court concludes that field preemption does not preclude the MPUC's authority to regulate rates for the network elements at issue in this case. Section 601 of the Act states: "This Act and the amendments made by this Act shall not be construed to

modify, impair or supersede Federal, State, or local law unless expressly so provided in such Act or amendments." Telecommunications Act of 1996, Pub. L. No. 104-104, § 601(c)(1) (1996). The Act addresses rate-setting for Section 251 Elements but is silent as to rates for Section 271 Elements. For those elements that are no longer Section 251 Elements yet remain Section 271 Elements, the Act thus lacks the express language required by Section 601 in order to preempt state law. Accordingly, the Price List Order is not preempted unless it conflicts with federal law or federal regulations.

### B.   Conflict Preemption

Qwest asserts that the just, reasonable, and nondiscriminatory standard adopted by the MPUC in the Price List Order for setting rates for Section 271 Elements conflicts with the FCC's market-based standard. Qwest acknowledges that under federal law Section 271 Elements are governed by the just, reasonable, and nondiscriminatory standard set forth in the Communications Acts of 1934. *See* 47 U.S.C. §§ 201-02. Qwest contends, however, that the FCC has determined that under that standard, RBOCs are permitted to charge a market-based rate instead of a regulated rate. Qwest argues that the FCC has established that a review of the reasonableness of the rates for Section 271 Elements is a fact-specific inquiry that should focus on the rates for comparable service provided under an interstate access tariff and prices that are the result of arms-length agreements with other carriers.

The MPUC asserts that no conflict exists because both state and federal law apply the same standard. The MPUC also asserts that the Price List Order furthers the purposes

of the Act by using interstate rates, which are presumed just and reasonable under federal law, as a benchmark for determining the reasonableness of intrastate rates under state law. The MPUC contends that the Price List Order is fully consistent with the FCC's guidance regarding the federal just and reasonable pricing standard because the Price List Order employs one of the two benchmarks set forth by the FCC and the second benchmark is unavailable.[1] The MPUC also asserts that the FCC has not adopted a market-based pricing standard, relying on the FCC's statement that "we find that the appropriate inquiry for network elements required only under section 271 is to assess whether they are priced on a just, reasonable and not unreasonably discriminatory basis—the standards set forth in sections 201 and 202."[2]

The Court concludes that the Price List Order does not conflict with federal law or federal regulations. The MPUC applied the same just, reasonable, and non-discriminatory standard set forth by Congress and structured the Price List Order consistent with FCC guidelines. While Qwest argues that the MPUC's reliance on interstate rates ignores other factors that the FCC has historically considered, where Qwest proposed charging an intrastate rate that differed from the corresponding interstate

---

[1] Because Qwest only sells the elements at issue in this case pursuant to its intrastate and interstate access tariffs, arms-length agreements with other carriers are not available for comparison.

[2] *See In the matter of Unbundled Access to Network Elements Review of Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, Report and Order, and Order on Remand and Further Notice of Proposed Rulemaking, 18 F.C.C.R. 16978 at ¶ 663 (August 21, 2003).

rate, the Price List Order expressly provided Qwest the opportunity to "submit a detailed rationale explaining the factual basis for the difference and demonstrating that the result is just, reasonable and nondiscriminatory." (Price List Order at 16.) The Court concludes that the Price List Order is not preempted.

## V. Arbitrary and Capricious

Qwest asserts that the MPUC's determination that Qwest's intrastate rates were unjust and unreasonable was arbitrary and capricious. Qwest argues that it presented evidence that its rates are consistent with the market, including that its rates are very similar to those charges by RBOCs in neighboring states and entirely in line with rates Qwest charges in multiple other states. Qwest asserts that it also presented evidence establishing that several Minnesota CLECs are offering the same elements as Qwest at rates that are higher than Qwest's rates.

The MPUC asserts that Qwest has failed to bring a proper claim that the MPUC engaged in arbitrary and capricious decision-making. The MPUC argues that because it is a state agency acting pursuant to state law, any claim that it acted arbitrarily or capriciously must be based on the Minnesota Administrative Procedures Act ("MAPA"). Because Qwest's Complaint failed to include an allegation that the Price List Order violates the MAPA, the MPUC argues that the Court need not reach this issue.[3] In the

---

[3] The MPUC also argues that the Court need not reach this issue because Qwest has not prevailed on its federal law claims and therefore the Court should decline to exercise supplemental jurisdiction over a pendent state law claim of arbitrary and capricious
(Footnote Continued on Next Page)

alternative, the MPUC asserts that the evidence identified by Qwest was considered and that both the ALJs and the MPUC concluded that the evidence was of little probative value.  The MPUC contends that Qwest's evidence consists of retail rates, while the rates at issue in the Price List Order are wholesale rates.

The Court concludes that Qwest's allegation that the MPUC's decision was arbitrary and capricious is properly before the Court.  Count IV, in which Qwest alleges that the MPUC failed to consider Qwest's evidence that the rates at issue are just and reasonable, is not restricted to the federal Administrative Procedures Act but instead alleges generally that the MPUC's actions were arbitrary and capricious.  Because the MAPA permits judicial review as to whether an agency decision was arbitrary and capricious, *see* Minn. Stat. § 14.69(f), the Court construes Count IV as alleging a violation of the MAPA.

Turning to the merits of Qwest's assertion, the Court concludes that the Price List Order was not the result of arbitrary and capricious decision making.  The record establishes that the ALJs and the MPUC considered the evidence identified by Qwest.  The determination by the ALJs and the MPUC that evidence of retail rates was of little probative value for the setting of wholesale rates is neither arbitrary nor capricious and the Court will not set aside the Price List Order on that basis.

---

(Footnote Continued From Previous Page)
decision making.

## CONCLUSION

The Court thus concludes that the MPUC acted within its state law authority in issuing the Price List Order and did so in a manner that was neither arbitrary nor capricious, and that the Price List Order is not preempted by federal law or federal regulations.

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Qwest's Motion for Judicial Review and Declaratory Relief (Doc. No. [17]) is **DENIED**.

2. Qwest's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  June 27, 2011             s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge